Dewey M. Saxon and his wife, Edna Saxon, sued the Alabama State Docks Department; its director, John Dutton; its safety director, Frank Daniels; and the State Docks' liability insurance carriers, Lloyd's Underwriters and various other insurance companies, seeking damages for personal injuries Dewey Saxon claimed to have sustained while he was delivering computer equipment to a building owned by the State Docks. Edna Saxon sought damages for loss of consortium. The Saxons alleged negligence and wantonness on the part of the State Docks, Dutton, and Daniels; they sought to recover insurance proceeds directly from the insurance carriers pursuant to Ala. Code 1975, § 33-1-25.
The State Docks, Dutton, and Daniels moved for a summary judgment, invoking the doctrine of sovereign immunity under Article I, § 14, Alabama Constitution, as a defense to the Saxons' claims. The insurance carriers also moved for a summary judgment, arguing that the State Docks' liability insurance policy did not authorize a direct action against them. The trial court denied these motions. We granted the defendants' requests for permission to appeal and set aside the trial court's order denying the motions for summary judgment, holding that the State Docks, Dutton, and Daniels were protected under the doctrine of sovereign immunity from liability in connection with Dewey Saxon's accident. We also held that the State Docks' liability insurance policy was not a "sham"; however, because the trial court had not ruled on them, we did not address the Saxons' arguments that § 33-1-25 and the liability insurance policy authorized them to file a direct action against the insurance carriers. We remanded the case for further proceedings consistent with our opinion. See Alabama StateDocks v. Saxon, 631 So.2d 943 (Ala. 1994).
On remand, the trial court entered a summary judgment for the insurance carriers, ruling as a matter of law that neither § 33-1-25 nor the insurance policy authorized the Saxons to sue the insurance carriers directly. The Saxons appealed, again arguing that they had either a statutory or a contractual right to maintain a direct action against the insurance carriers. We affirm.
It is a well-recognized rule that when the liability of an insurer to pay for injuries suffered by a third party is predicated on the establishment of the liability of its insured to that third party, a direct action by the third party against the insurer is not permitted under Alabama law until the third party has obtained a judgment against the insured. Of course, this rule would not be applicable in this case if § 33-1-25 or the State Docks' liability insurance policy authorized a direct action by the Saxons against the insurance carriers, because in such a case the insurance carriers' obligation to pay for Dewey Saxon's injuries would not be predicated on the establishment of legal liability on the part of the State Docks. See StateFarm Fire Casualty Co. v. Green, 624 So.2d 538 (Ala. 1993).
The Saxons contend that the third clause of the third sentence in § 33-1-25 *Page 633 
authorizes a direct right of action by an injured third party against the State Docks' insurance carriers unless the insurance policy expressly prohibits such an action. Section33-1-25 reads as follows:
 "The state docks department is hereby authorized to provide insurance covering loss or damage to its properties, or any properties of others in its custody, care or control, or any properties as to which it has any insurable interest, caused by fire or other casualty; and may likewise provide insurance for the payment of damages on account of the injury to or death of persons, and the loss of or destruction of properties of others; and may pay the premiums thereon out of the revenues of the department. Nothing herein shall be construed to authorize or permit the institution of any civil action or proceeding in any court against the department for or on account of any matters referred to in this section; provided, that any contracts of insurance herein authorized may, in the discretion of the director of the department, provide for a direct right of action against the insurance carrier for the enforcement of any such claims or causes of action. The liability under any such policy or contract of insurance, arising out of such facts and circumstances as would bring such claim or cause of action within the provisions of chapter 5 of Title 25 of this Code, if the department were subject to the provisions of said law, shall be governed by the provisions of said law; provided, however, that the director of the state docks department may increase the hospital and medical liability coverage if in his opinion he deems such increase of such liability coverage to be in the best interests of the department; the liability in all other cases from any such policy or contract of insurance, except to the extent expressly stated to the contrary therein, shall be the same as that imposed by law upon private persons, firms or corporations in like circumstances."
The insurance carriers contend that the Saxons are reading the third clause in the last sentence of this section out of context and that the language relied on by the Saxons has nothing to do with whether a direct action can be maintained against the insurance carriers. They argue that judicial acceptance of the Saxons' construction of § 33-1-25 would completely thwart the legislative intent behind the statute.
In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala. 1988), this Court noted the rules of statutory construction that are applicable here:
 " 'The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93
(Ala. 1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974).
 If possible, the intent of the legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School College Authority, 362 So.2d 850
(Ala. 1978). If the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139
(Ala. 1978); League of Women Voters v. Renfro, supra.'
 "Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala. 1987). In deciding between alternative meanings to be given to an ambiguous or uncertain statutory provision, we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, see State v. Calumet Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (1953); Crowley v. Bass, 445 So.2d 902
(Ala. 1984) (dictum); 2A N. Singer, Sutherland Statutory Construction § 45.12 (Sands 4th ed. 1984), one that advances the legislative purpose in adopting the legislation, see Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754 (Ala. 1978), that is 'workable and fair,' State v. Calumet Hecla Consol. Copper Co., supra; Ex parte Hayes, 405 So.2d 366 *Page 634 
(Ala. 1981), and that is consistent with related statutory provisions, see Tate v. Teague, 431 So.2d 1222 (Ala. 1983). . . ."
Section 33-1-25 consists of three sentences. The first sentence, in pertinent part, provides that the State Docks is authorized to provide insurance "for the payment of damages on account of the injury to or death of persons" and that the premiums for such liability coverage may be paid out of the revenues of the State Docks Department. This sentence is clear enough. The second sentence states that nothing in § 33-1-25
should be construed to authorize or permit a civil action against the State Docks, and that the director of the State Docks, in his discretion, may provide in the insurance policy for a direct right of action by an injured third party against the State Docks' insurance carriers. Again, this sentence is clear on its face. The third sentence, however, is more problematic. The first clause of that sentence provides that "[t]he liability under any such policy or contract of insurance [a policy authorized to be purchased by the State Docks], arising out of such facts and circumstances as would bring such claim or cause of action within the provisions of chapter 5 of Title 25 of this Code [the Workers' Compensation Act], if the department were subject to the provisions of [that] law, shall be governed by the provisions of [that] law. . . ." By including this language in the statute, the legislature apparently intended not only to authorize the State Docks to enter into contracts of insurance for the indemnification of its employees' losses due to on the job accidents, but also to extend to them all of the benefits of the Workers' Compensation Act. See Hale v. United States Fidelity Guaranty Co.,45 Ala. App. 379, 231 So.2d 156 (Ala.Civ.App. 1970). The second clause of the third sentence authorizes the director of the State Docks to provide greater hospital and medical benefits to employees of the State Docks than are required under the workers' compensation laws, see Ala. Code 1975, § 25-5-77, if the director deems that to be in the best interests of the State Docks Department. The third clause of the third sentence, the one principally relied on by the Saxons and the one that causes the greatest confusion, states that the liability of the State Docks' insurance carriers "in all other cases . . . shall be the same as that imposed by law upon private persons, firms or corporations in like circumstances," subject to any exclusions from liability contained in the policy. The Saxons insist that the third clause has the effect of putting the State Docks' liability insurance carriers in the same legal position as "private persons, firms or corporations" (i.e., persons or entities not protected under the doctrine of sovereign immunity) for purposes of tort liability. In other words, the Saxons argue, the insurance carriers, by virtue of §33-1-25, are directly liable for the torts committed by employees of the State Docks, just as private individuals or corporations in general would be liable for their own tortious acts.
After carefully examining the third sentence of § 33-1-25, in conjunction with the second sentence of that section, which confers discretion on the State Docks' director to provide in the liability insurance policy for a direct right of action against the State Docks' insurance carriers, we must agree with the insurance carriers that the third clause in the third sentence deals only with workers' compensation benefits and does not provide to the Saxons a direct right of action against the State Docks' insurance carriers. The common subject of all three of the clauses making up the third sentence is liability for claims arising out of such facts and circumstances as would bring them under Chapter 5 of Title 25 of the Alabama Code (i.e., the Workers' Compensation Act). The third clause of the third sentence is separated from the second clause of that sentence by a semicolon, rather than by a period. One of the common uses of a semicolon is to separate independent clauses closely connected in meaning. See J. McCrimmon, Writing With APurpose, 409-10 (5th ed. 1974); F. Crews, The Random HouseHandbook, 341 (2d ed. 1977). "A semicolon is . . . employed to separate independent elements, especially when they are related and not joined by a conjunction." The American HeritageDictionary of the English Language (American Heritage Publishing Co. 1969). It is, therefore, logical to assume that the legislature used a semicolon, rather than a period, to separate the *Page 635 
third clause from the first and second clauses of the third sentence because the subject matter of the third clause is closely related to the subject matter of the two preceding clauses. As we read it, the third clause really does nothing more than restate what is already stated in the first two clauses; that is, it states that, subject to any exclusions contained in the insurance policy, the liability of the State Docks' workers' compensation insurance carriers is governed by the Workers' Compensation Act, except to the extent that the State Docks' director has provided for increased medical benefits in the policy. To hold as the Saxons suggest, we would have to assume that the legislature intended to take away in the third sentence a specific right that it had just conferred in the second sentence (i.e., the right on the part of the State Docks' director to exercise discretion and contractually provide for a direct right of action). This we cannot do. SeeBlumberg Shoe Co. v. Phoenix Assurance Co., 203 Ala. 551, 554,84 So. 763 (1919), wherein this Court stated:
 "There is a strong presumption that the Legislature does not intend to contradict in one paragraph of a legislative act that which it has deliberately declared in another. Hence the familiar rule of construction which imputes to an apparently or possibly contradictory paragraph any rational meaning which will avoid its seeming contradiction of another paragraph whose meaning is clear and certain."
We hold, therefore, that § 33-1-25 does not provide to an injured third party a direct right of action against the State Docks' insurance carriers.
We note that the Saxons' reliance on Centraal StikstofVerkoopkanter, N.V. v. Walsh Stevedoring Co., 380 F.2d 523 (5th Cir. 1967), is misplaced. In that case, the Fifth Circuit Court of Appeals had before it an insurance policy that provided, in pertinent part, as follows:
 " 'Now, therefore, in consideration of [the] premium at which this policy is written it is agreed between the said department [State Docks] and the said insurance company [United States Fidelity and Guaranty Co. ("USF G")], as follows:
" '. . . .
 " '(2) Anything in the attached policy or in any rider or endorsement attached thereto [to] the contrary notwithstanding, there shall be a direct right of action and suit against the insurance company issuing the policy for the enforcement of any claims or causes of action covered by the said policy and any immunity of the said board from suit shall not in any manner be a defense to any such suit against the company, within the limits prescribed in the said policy to be as contemplated by said law.' "
The court stated:
 "The applicable provisions of [§ 33-1-25,] which permits the State Docks to obtain insurance coverage[,] [provide] that insurance may be obtained for damage to the property of others in the custody and control of the State Docks and that the insurer's liability shall be the same as if the Docks were a private person, subject to the express limitations of the policy. . . . It is manifest from a reading of the [policy] that it was designed to remove any doubts and to insure a direct right of action against the insurance company. The purpose of the [policy language] was to make it clear that the defense of sovereign immunity would not be interposed by the insurance company in any claim under the policy, and to obviate the necessity of obtaining a judgment against the insured before recourse could be had against the company."
380 F.2d at 533. Although the court did not construe the third clause of the third sentence in § 33-1-25 as dealing only with workers' compensation benefits, see 380 F.2d at 533, n. 7, neither did it hold that the third clause provided a direct right of action against USF G, the State Docks' insurance carrier. Unlike the policy in the present case, the policy at issue in Centraal contained a specific "direct right of action" provision; the question of whether § 33-1-25 provided a direct right of action was not before the court. The above-quoted language from Centraal indicates that the court merely construed § 33-1-25 as making the State Docks' status as a state agency protected *Page 636 
under the doctrine of sovereign immunity irrelevant with respect to USF G's liability for risks covered under the policy.
The Saxons also contend that the State Docks' liability insurance policy authorizes a direct right of action against the insurance carriers. Specifically, the Saxons rely on three provisions in that policy. The first provision states in pertinent part:
 "With respect to such insurance as is afforded by this Policy it is agreed that:
 "a. Underwriters will not use, either in the adjustment of claims or in the defense of suits against the Assured, the 'Sovereign Immunity' of the Assured from tort liability except upon written request of the Named Assured."
(Emphasis added.) This provision, however, merely confers upon the State Docks the option of raising the doctrine of sovereign immunity as a defense in actions against it. Under this provision, the insurance carriers cannot raise the doctrine of sovereign immunity in defense of any claims made, or actions filed, against the State Docks, unless they are specifically authorized in writing to do so by the State Docks. This provision does not authorize a direct right of action against the insurance carriers.
The second provision relied on by the Saxons provides as follows:
 "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be upon Mendes and Mount, 3 Park Avenue, New York, NY, 10018, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
 "The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.
 "Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the same officer is authorized to mail such process or a true copy thereof."
This provision was clearly intended to bring the insurance policy into compliance with the various service-of-process requirements in this country. This provision has nothing to do with a direct right of action against the insurance carriers; it does not authorize such an action, nor does it prohibit one. If a direct right of action is otherwise provided for in the policy, then this provision comes into play with respect to the manner of service of process on the insurance carriers.
The third provision relied on by the Saxons states:
 "In the event that any provision of this Policy is unenforceable by the Assured under the laws of any State or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of noncompliance with any statute thereof, then this Policy shall be *Page 637 
enforceable by the Assured with the same effect as if it complied with such statute."
This provision, like the previous provision dealing with service of process, serves merely to conform the policy to the requirements of this country's laws. Nothing in this provision either expressly or impliedly creates a direct right of action against the insurance carriers.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.
KENNEDY, J., concurs in the result.
SHORES and INGRAM, JJ., dissent.