[1] Ms. Sorrell's name is spelled this way on the cover of the record; however, within the record, her name is spelled "Janis."
Certain Jefferson County juvenile probation officers, whose salaries were subsidized by the state Department of Youth Services, sued asking the trial court to determine whether the Jefferson County Personnel Board is required by statute to increase their salaries. The trial court held that the statute in question, § 44-1-26, Ala. Code 1975, did not require salary increases for those officers. The juvenile probation officers appealed to the Alabama Supreme Court, which transferred the case to this court for lack of jurisdiction.
In May 1994, the Alabama Legislature passed an act that established a minimum number of juvenile probation officers for each county, based on the population of each county; established a minimum salary of $22,000 for juvenile probation officers; and increased the amount of the salary subsidies paid by the state Department of Youth Services for each county's allotted number of juvenile probation officers. The act, Act No. 94-829, 1994 Ala. Acts, is codified at § 44-1-26, Ala. Code 1975. The statute reads in pertinent part:
 "(a) The Department of Youth Services shall provide salary subsidies for juvenile probation services to all Alabama counties.
". . . .
 "(2) The department shall expend funds to provide a salary subsidy of twenty-two thousand dollars ($22,000) or one-half of the total salary actually paid to a juvenile probation officer, whichever is greater, for the number of probation officers subsidies provided to a county in the formula in subdivision (1). . . .
 "Salary rates and ranges for juvenile probation officers shall be established by county personnel boards, county commissions, or any other local entities. These salary rates and ranges shall be adjusted to reflect a minimum salary for juvenile probation officers of twenty-two thousand dollars ($22,000) effective October 1, 1994. In adjusting the salary rates and ranges of juvenile probation officers, no county shall reduce the portion it pays for any probation officer's salary below the salary level in effect on January 1, 1994. *Page 1212 
 "(3) The provisions of subdivision (2) shall apply for juvenile probation officers employed before or on September 30, 1994. Any juvenile probation officers first employed on or after October 1, 1994, shall be paid at least the minimum salary of twenty-two thousand dollars ($22,000) with the county providing one-half of the salary authorized for the new employees and the remaining half provided by the state."
§ 44-1-26, Ala. Code 1975 (emphasis added).
The juvenile probation officers argue that in the emphasized portion of the statute, the Legislature mandated a raise for each officer by requiring all Alabama counties, including Jefferson, to continue to pay the same amount toward each officer's salary as it paid before the subsidy increase. On the other hand, the personnel board contends that in adopting Act No. 94-829, the Legislature did not intend for individual juvenile probation officers to receive increased salaries. Instead, it argues, the subsidies were intended to give counties more juvenile probation officers, and in those counties where juvenile probation officers were not receiving a minimum salary of $22,000 the subsidies were intended to assist counties in reaching that minimum.
The law is well settled concerning the rules of statutory construction. "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute." John Deere Co. v. Gamble,523 So.2d 95, 99 (Ala. 1988). "If possible, the intent of the legislature should be gathered from the language of the statute itself." Id. at 99-100. However, the legislature's intent also may be discerned from the reasons and necessity for the act, and the goal sought to be obtained. Hines v. RiversideChevrolet-Olds, Inc., 655 So.2d 909, 924 (Ala. 1994). "If a statute is susceptible to two constructions, one of which is workable and fair and the other unworkable and unjust, the court will assume that the legislature intended that which is workable and fair." Id. Our Supreme Court has written regarding contradictory language in a statute:
 "There is a strong presumption that the Legislature does not intend to contradict in one paragraph of a legislative act that which it has deliberately declared in another. Hence the familiar rule of construction which imputes to an apparently or possibly contradictory paragraph any rational meaning which will avoid its seeming contradiction of another paragraph whose meaning is clear and certain."
Saxon v. Lloyd's of London, 646 So.2d 631, 635 (Ala. 1994) (quoting Blumberg Shoe Co. v. Phoenix Assurance Co., 203 Ala. 551,554, 84 So. 763 (1919)). See generally, 2A N. Singer,Sutherland Statutory Construction § 45.12 at 61 (5th ed. 1992).
Section 44-1-26(a)(2), as amended by the 1994 act, specifically provides that county personnel boards or other local entities shall establish the pay rate for juvenile probation officers, with the stipulation that the minimum salary must be $22,000. The last sentence of subdivision (2), the linchpin in the juvenile probation officers' argument, reads, "In adjusting the salary rates and ranges of juvenile probation officers, no county shall reduce the portion it pays for any probation officer's salary below the salary level in effect on January 1, 1994." The new salary rates became effective October 1, 1994.
The wording of § 44-1-26 leaves room for more than one construction. The statute is unclear as to whether "in adjusting the salary rates and ranges" counties had to provide raises for juvenile probation officers already making more than $22,000, or whether the subsidy from DYS was to be used to ensure that all juvenile probation officers in the state received salaries of at least $22,000. Therefore, the trial court acted properly in trying to determine which meaning the legislature intended for the statute.
"If a statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another." John Deere Co., 523 So.2d at 100. The record shows that Jefferson County was paying each of its juvenile probation officers more than $22,000 before the passage of Act 94-829. *Page 1213 
The county also employed more juvenile probation officers than were subsidized by the Department of Youth Services. Under the juvenile probation officers' construction of the statute, each subsidized probation officer would receive a raise equal to the difference between the amount of the old subsidy and the amount of the new subsidy. The officers cite the testimony of Ralph Lurker, past chairman and general counsel for the Alabama Chief Probation Officers Association, in support of their position. The record shows that Lurker testified that juvenile probation officers' low salaries led to the passage of the Act. He also testified that the clause at issue — "no county shall reduce the portion it pays for any probation officer's salary below the salary level in effect on January 1, 1994" — was added to the bill so that "the county's portion of the juvenile probation officers' salary would have to remain the same both after the Act as well as before the Act." We note that when Lurker and the juvenile probation officers refer to the disputed clause, they ignore the beginning of the sentence, which reads, "In adjusting the salary rates and ranges of juvenile probation officers. . . ."
Evidence also shows, however, that the result of the plaintiffs' interpretation would be that the least experienced officers at the lowest end of the pay scale would receive the largest raises. The pay scale established by the personnel board, which already surpassed the requirements of § 44-1-26, would be ruined and essentially replaced with a new, much higher pay scale dictated by the state. Such an outcome would be a direct contradiction of that portion of the statute that requires local entities, such as the personnel board, to establish the pay rates of their juvenile probation officers.
In addition, the new pay scale would result in higher starting pay for those juvenile probation officers hired before October 1, 1994, if the officers hired after that date were subject to the $22,000 minimum, or even the $22,000-plus minimum already in effect in Jefferson County. Otherwise, the statute would require a higher minimum salary for Jefferson County and any other county that was paying more than $22,000 as a starting salary for its juvenile probation officers.
According to the record, one of the purposes of the statute was to raise the low salaries some counties were paying their juvenile probation officers; for that purpose, the Legislature established a minimum salary of $22,000. Under the probation officers' construction of the statute, those counties that were already paying their juvenile probation officers at a rate in line with the new minimum, or even above the minimum, as Jefferson County was, would be required to pay their juvenile probation officers even more, even though the salaries paid before the act was passed were reasonable. We believe, however, that because Jefferson County already was paying its juvenile probation officers the required minimum salary, the county personnel board had no need to adjust the officers' salaries.
"It is important that a statute not be read in an atmosphere of sterility, but in the context of what actually happens when human beings go about the fulfillment of its purposes." 2A N. Singer, Sutherland Statutory Construction § 45.12 at 61 (5th ed. 1992). The juvenile probation officers' construction of §44-1-26 would cause unfair and unworkable results. It also would render meaningless that portion of the statute requiring local entities to establish pay rates for juvenile probation officers. Therefore, we agree with the interpretation of the trial court and the personnel board that the statute requires counties to continue to pay their share of the juvenile probation officers' salaries, in adjusting those officers' salaries to bring them in line with the $22,000 minimum. It does not require the personnel board to set juvenile probation officers' salaries at an even higher rate simply because the officers were already being paid at at least that rate. The judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 1214