HOOPER, Chief Justice
(dissenting).
I must respectfully dissent. The majority has subverted § 44-1-26, Ala.Code 1975, and has provided a windfall to Jefferson County’s probation program at the expense of its state-subsidized juvenile probation officers, who are due a raise under Act 94-829, Ala. Acts 1994 (“the Act”). Section 44-1-26 was amended in 1994 by the Act to give all counties a subsidy of at least $22,000 for the salary of each authorized juvenile probation officer. However, the Act specifically prohibits a county, when adjusting the salary rates of juvenile probation officers, from reducing the amount of the salaries it pays them. The Act cannot be more clear. The county must continue paying the same “portion” of any state-subsidized juvenile probation officer’s salary that it was paying as of January 1,1994.
Before the Act was adopted, § 44-1-26 required the Department of Youth Services (“DYS”) to match the salary paid by each county for its juvenile probation officers. The DYS provided matching funds for juvenile probation officers’ salaries according to the ratio of one juvenile probation officer for every 20,000 county residents. A county could choose to employ more juvenile probation officers, but the county would not receive any salary subsidies for the additional juvenile probation officers. Therefore, before the Act, the DYS subsidized one half of the salaries for 33 of the 47 juvenile probation officers employed by Jefferson County.
However, upon the amendment of § 44-1-26 by the Act, the DYS would subsidize one juvenile probation officer for every 15,000 county residents. § 44r-l-26(a)(l). The Act also increased the amount of each subsidy given by the DYS to each county, § 44-1-26(a)(2); subsection (a), as amended, specifically provides:
“(2) The department [DYS] shall expend funds to provide a salary subsidy of twenty-two thousand dollars ($22,000) or one-half of the total salary actually paid to a juvenile probation officer, whichever is greater, for the number of probation officers subsidies provided to a county in the formula in subdivision (1)....
“Salary rates and ranges for juvenile probation officers shall be established by county personnel boards, county commissions, or any other local entities. These salary rates and ranges shall be adjusted to reflect a minimum salary for juvenile probation officers of twenty-two thousand dollars ($22,000) effective October 1, 1994. In adjusting the salary rates and ranges of juvenile probation officers, no county shall reduce the portion it pays for any probation officer’s salary below the salary level in effect on January 1,1991.
“(3) The provisions of subdivision (2) shall apply for juvenile probation officers employed before or on September 30,1994. *1215 Any juvenile probation officers first employed on or after October 1,1994, shall be paid at least the minimum salary of twenty-two thousand dollars ($22,000) with the county providing one-half of the salary authorized for the new employees and the remaining half provided by the state.”
§ 44-l-26(a) (emphasis added). Even though Jefferson County has received the additional funding, it has refused to raise the salaries it pays to its 33 subsidized juvenile probation officers. Jefferson County continues to pay the juvenile probation officers the same salaries they received before the Act was passed. It has reduced “the portion” it pays to its juvenile probation officers and simply considered the new State money a windfall the county could use for other purposes. This is a dear violation of the Act.
The juvenile probation officers of Jefferson County sued on November 7, 1994, in the Circuit Court of Jefferson County, seeking a writ of mandamus and a judgment declaring their right to a salary increase under the Act. The circuit court held that the Act did not require Jefferson County to increase the salaries of the 33 subsidized juvenile probation officers, declaring that the purpose of the Act was to establish a statewide minimum salary of $22,000 for juvenile probation officers. The Court of Civil Appeals affirmed the judgment of the trial court. Sorrell v. Johnson, 690 So.2d 1210 (Ala.Civ.App.1996). The Court of Civil Appeals noted that on matters of statutory interpretation the intent of the legislature should always be given effect and that if there are several ways of interpreting a statute, courts should assume that the legislature intended one that is workable and fair. The Court of Civil Appeals determined that the Act was ambiguous; therefore, it held, situations that might arise in implementing the statute could be considered, such as the percentage of a pay increase that would be given to juvenile probation officers with different levels of experience, the starting salaries for new juvenile probation officers, and the fact that counties are to establish the pay rates for juvenile probation officers. The Court of Civil Appeals concluded that each county is not required to increase the juvenile probation officers’ salaries but is required merely to bring the juvenile probation officers’ salaries in line with the $22,000 minimum.
The defendants contend that the purpose of the Act is to establish a minimum $22,000 salary level for all juvenile probation officers statewide. They argue that if a county already meets the $22,000 minimum threshold, and Jefferson County does, then it is not required to further increase the juvenile probation officers’ salaries but may use the additional moneys to offset the amount that had been paid by the county.
“If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” Tuscaloosa County Commission v. Deputy Sheriffs’ Ass’n, 689 So.2d 687, 689 (Ala.1991). The Act explicitly states that a county “cannot reduce the portion it pays for any probation officer’s salary below the salary level in effect on January 1, 1994.” However, this is exactly what Jefferson County has done. Instead of increasing the salaries it pays its juvenile probation officers, Jefferson County continues to pay them the same salaries, but offsets the portion it pays with the moneys provided by the DYS. For example, if a Jefferson County juvenile probation officer was paid $22,000 per year as of January 1, 1994, then $11,000 was paid by the County and $11,000 was paid by the DYS. Since the adoption of the Act, that same juvenile probation officer is still being paid $22,000, but all $22,000 of the officer’s salary is being paid by the DYS. Jefferson County pockets the $11,000 it had formerly paid that officer. This directly contradicts the language in the Act and amounts to a windfall to Jefferson County, to the detriment of its subsidized juvenile probation officers.
Other authorities have also interpreted that Act to require counties to maintain their salary contributions to subsidized juvenile probation officers at the level that was in effect as of January 1, 1994. Although it is not binding authority, an August 19, 1994, opinion of the attorney general interpreting the Act said counties could not decrease the portion of juvenile probation officers’ salaries paid by the county. The attorney general’s *1216 opinion provided the following helpful example:
“Any [juvenile probation officer] employed on January 1, 1994, having a salary of $16,000 per annum will be entitled to an increase in his salary to $30,000 effective May 13, 1994. Previous to May 13, 1994 [the date that the Act was enacted] one-half ($8,000) was paid by DYS and one-half ($8,000) was provided by the county. After May 13, 1994, $22,000 is provided by DYS, and the county’s portion remains at $8,000.”
(Emphasis added.) In addition, all but three counties (Jefferson, Mobile, and Montgomery Counties) have interpreted the Act to forbid a county from reducing its contribution toward the juvenile probation officers’ salaries and have raised the salaries of their juvenile probation officers.
The majority quashes the writ. However, I think this Court should reverse the judgment of the Court of Civil Appeals. Therefore, I respectfully dissent.