MOORE, Judge,
concurring in part and dissenting in part as to the rationale and concurring in the result.
I concur in that part of the main opinion affirming that portion of the judgment refusing to terminate the periodic-alimony obligation of Romaine Samples Scott III (“the former husband”) on the basis of the alleged cohabitation of Catherine Grace Scott (“the former wife”) with a person of the opposite sex. The facts of this case mirror almost exactly the facts in Rutland v. Rutland, 494 So.2d 662 (Aa.Civ.App.1986), another case in which this court affirmed a trial court’s judgment based on its factual determination that a spouse who was receiving alimony was not cohabiting with her social and romantic companion.
In his brief to this court, the former husband argues that he presented sufficient evidence to support a finding of cohabitation. Indeed, some aspects of the testimony of the former wife alone would have justified a finding that the former wife had at least, at one point in time, cohabited with a member of the opposite sex. However, under the ore tenus rule applicable to this case, our review is restricted to a determination of whether the trial court’s factual findings are supported by credible evidence. McNatt v. McNatt, 908 So.2d 944, 945 (Aa.Civ.App.2005). That standard of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that sufficient, or even arguably more substantial, evidence supports a contrary factual finding. See Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). Hence, I find the former husband’s argument unavailing, and I agree with the main opinion that the trial court did not commit reversible error by failing to find that the former wife had been cohabiting with a person of the opposite sex.
I also concur in that part of the main opinion reversing that portion of the judgment holding the former husband in contempt. Athough, on February 10, 2009, the former husband purged himself of contempt by paying the former wife the alimony he had paid into escrow, together with interest, his appeal as to this issue is not moot. See Gilbert v. Nicholson, 845 So.2d 785 (Ala.2002) (appellant’s purging of contempt by payment of past-due child support did not moot appeal); see also Ex parte Parmer, 373 So.2d 845 (Ala.1979).
Substantively, I agree with the main opinion that the record contains no credible evidence supporting the trial court’s factual determination that the former husband alleged the cohabitation of the former wife in bad faith.[9] At trial, the former *89 wife bore the burden of proving that the former husband had committed contempt of court. In her brief to this court, the former wife argues that she carried her burden by proving that the former husband alleged cohabitation based exclusively on hearsay, specifically, the out-of-court statements of the parties’ daughter. I cannot agree that the former husband relied on only hearsay to form his belief that the former wife was cohabiting. The former husband testified that, in addition to statements he received from the parties’ daughter, he had also suspected that the former -wife was cohabiting based on his personal observations of the former wife and her alleged paramour at family events. Nevertheless, even if the former husband had based his allegation exclusively on the daughter’s statements, such reliance does not constitute bad faith. In many civil cases, at the time of the filing of a pleading, a party may have no access to firsthand information or other admissible evidence to prove his or her allegations, but that certainly does not mean that those allegations have no substantial justification or that the allegations are interposed for vexatious purposes. See Ala.Code 1975, § 12-19-271(1) (defining “without substantial justification” as that term is used in the Alabama Litigation Accountability Act, Ala.Code 1975, § 12-19-270 et seq.). In this particular case, for example, the hearsay statements turned out to be reliable because, in her testimony at trial, the former wife actually confirmed many of the statements contained in the affidavit of the daughter that, as elaborated above, would have supported a finding of cohabitation. Because there appears to be no other basis for its finding, the trial court obviously erred in concluding that the former husband had alleged cohabitation in bad faith.
The trial court likewise erred in finding that the former husband had paid alimony into escrow in bad faith. The undisputed testimony shows that the former husband relied on a statement contained in Sanders v. Burgard, 715 So.2d 808, 811 (Ala.Civ.App.1998), when, without first receiving permission from the trial court, he ceased making alimony payments to the former wife and, instead, made those payments into an escrow account pending the outcome of the parties’ litigation. The parties dispute whether the statement from Sanders that the former husband relied on is dictum, but, even if it is, I find that it is sufficiently authoritative to remove any implication that the former husband was acting willfully and contumaciously when he followed its direction. See Rule 70A(a)(2)(D), Ala. R. Civ. P. (defining “civil contempt” as the “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with”).
Although the main opinion’s conclusion that the trial court committed reversible error in finding the former husband in contempt completely resolves that issue, the majority today modifies the directive in Sanders by creating a new procedure requiring a payor spouse to file a motion and to receive the approval of the court before paying alimony into escrow. I do not believe that procedure solves the dilemma at hand. Section 30-2-55, Ala. Code 1975, provides:
“Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony *90 has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex. This provision shall be applicable to any person granted a decree of divorce either prior to April 28, 1978, or thereafter; provided, however, that no payments of alimony already received shall have to be reimbursed.”
(Emphasis added.) Both Sanders, 715 So.2d at 810, and Ex parte Ward, 782 So.2d 1285, 1288 (Ala.2000), state that the last line of § 80-2-55 prohibits reimbursement of payments of alimony made to a cohabiting spouse. Thus, should a trial court exercise its discretion by denying a motion to escrow alimony payments pen-dente lite, only to later determine that the receiving spouse had been cohabiting with a member of the opposite sex within the meaning of § 30-2-55, the trial court would be powerless to order the receiving spouse to return the funds. On the other hand, should the trial court exercise its discretion by granting the motion, only to later determine that the receiving spouse had not been cohabiting, the release of the escrow funds, even with interest, may in many cases prove an inadequate remedy to a receiving spouse who has undergone financial hardship in the interim.
In my opinion, the better solution, and one which would protect all the parties, would be to hold that § 30-2-55, in fact, does not prevent reimbursement of alimony payments made to a receiving spouse judicially determined to have cohabited with a member of the opposite sex. That construction would allow an allegedly cohabiting spouse to continue to receive alimony without it being placed in escrow. If the trial court determines that the receiving spouse has been cohabiting, the trial court may protect the payor spouse by ordering the receiving spouse to reimburse the periodic-alimony payments made during the period of cohabitation. If the trial court determines that the receiving spouse has not been cohabiting, the parties would remain in status quo, sparing the receiving spouse from any financial hardship.
I believe ordinary rules of punctuation would support the foregoing construction. The first clause in the last sentence of § 30-2-55 is separated from the second clause by a semicolon. In discussing the use of a semicolon in another statute, our supreme court stated:
“One of the common uses of a semicolon is to separate independent clauses closely connected in meaning. See J. McCrimmon, Writing With A Purpose, 409-10 (5th ed.1974); F. Crews, The Random House Handbook, 341 (2d ed.1977). ‘A semicolon is ... employed to separate independent elements, especially when they are related and not joined by a conjunction.’ The American Heritage Dictionary of the English Language (American Heritage Publishing Co. 1969). It is, therefore, logical to assume that the legislature used a semicolon, rather than a period, to separate the third clause from the first and second clauses of the third sentence because the subject matter of the third clause is closely related to the subject matter of the two preceding clauses.”
Saxon v. Lloyd’s of London, 646 So.2d 631, 634-35 (Ala.1994). Following that logic, the second clause of the last sentence of § 30-2-55 bears a close relation to the first clause of that same sentence. The legislature obviously intended that § 30-2-55 would apply to divorce judgments entered on or after April 28, 1978, and that payments of alimony received before that date would not be reimbursable. The legislature did not intend, as the courts stated in Sanders and Ward, that alimony payments made to cohabiting former spouses would never be reimbursable after April 28, 1978.
*91 Of course, this court has the power to overrule Sanders because it is one of our own opinions. However, this court has no power to overrule decisions of the Supreme Court of Alabama. C & S Constr. Co. v. Martin, 420 So.2d 788, 789 (Ala.Civ.App.1982). Based on my review of the statement in Ward, however, I am not convinced that our supreme court actually decided that the last line of § 30-2-55 prevents a refund for any periodic alimony a payor spouse has already paid after cohabitation begins. That issue was not even before the court in Ward — nothing in the facts indicates that the payor spouse was even seeking a refund of alimony payments made to the cohabiting receiving spouse. Hence, the statement in Ward appears to be dictum, which, though persuasive, is not binding on this court. See Ex parte M.D.C., 39 So.3d 1117, 1141 (Ala.2009). By overruling Sanders, and by contradicting the dicta in Ward, I do not believe we would exceed our authority. However, as I am in the minority on that point, I can only respectfully dissent and urge the supreme court to reconsider its position.
Finally, I concur in the result as to the affirmance of that portion of the judgment reducing, but not terminating, the former husband’s alimony obligation. Although I agree with the former husband that the evidence shows without dispute that the former wife is now self-supporting without the alimony, see Peterman v. Peterman, 510 So.2d 822, 823 (Ala.Civ.App.1987) (holding that a former spouse is self-supporting when his or her total income equals or exceeds his or her expenses), the former husband cites no authority that requires a trial court to terminate alimony based on a finding that the receiving spouse is currently self-supporting. See Rule 28, Ala. R.App. P. In fact, our case-law indicates that a trial court retains the discretion to maintain alimony even when the receiving spouse has become self-supporting. See Peterman, 510 So.2d at 823 (“We hasten to point out that even where a recipient of periodic alimony is determined to be self-supporting, such fact would merely authorize a trial court to terminate or modify periodic alimony in its discretionary power, yet such would not necessarily mandate the court to do so.”); see also Jones v. Jones, 251 Ala. 179, 181, 36 So.2d 310, 312 (1948) (return to employment by former wife and her ability to thereafter “make both ends meet” did not mandate reduction or termination of alimony). By relying solely on the argument that the trial court was required to terminate his periodic-alimony obligation based upon the evidence that the former wife is self-supporting, the former husband has utterly failed to show that the trial court exceeded its discretion.

. The main opinion states that "we cannot find any evidence to support the trial court’s finding that the former husband filed the petition to modify in bad faith.” 38 So.3d at 86. Actually, the trial court did not find that the former husband filed the entire petition to modify in bad faith. It found only that the former husband had alleged cohabitation in bad faith. Hence, I believe the main opinion is overly broad in addressing the good faith of *89 the former husband in alleging that alimony should be modified based on the changed financial circumstances of the parties.