CHRISTIE, Justice:
 

 In this appeal, the Supreme Court must decide whether it was an abuse of discretion for the Family Court to refuse to treat as a marital asset, to be divided between the former husband and wife, the value of a vested pension, almost all of which had been earned during the marriage and which was soon to be payable (over a period of years, in installments) to the husband.
 

 We hold that it was error to make no division of the pension rights, in view of the absence of any award to the wife to compensate her, in whole or in part, for her claim to a share of the pension. We remand the case for a recalculation of an equitable division of marital property. In so doing, however, we expressly recognize that some of the factors which caused the Family Court to exclude the vested pension from the assets to be divided as marital property may still be considered by the Family Court and accorded some weight when it again faces the issue of the percentage and form of marital assets to which each litigant should be entitled.
 

 The controlling facts are not complex, and they are largely undisputed. Husband and wife were married in 1963.
 
 [1]
 
 Two weeks later, husband started his employment with a major corporation, which was to employ him for the rest of his working career. His employer provided what turned out to be very favorable employee
 
 *1246
 
 benefits, including an employee stock ownership plan, a thrift plan, and a pension plan.
 

 In 1964, the wife gave birth to their only child. The wife served as a mother and a homemaker and was not employed outside the home, except for brief intervals, until 1977, when she obtained employment with a major corporation where she is still employed.
 

 In 1981, the parties began to have marital difficulties, and, in 1982, they were divorced in Family Court. Their child attained the age of 18 shortly after the divorce, and the Family Court did not find the wife to be eligible for alimony in view of her ability to support herself. Therefore, the principal matter, ancillary to the divorce, to be resolved by Family Court was an equitable division of marital property pursuant to 13
 
 Del. C.
 
 § 1513(a).
 
 [2]
 

 Hearings on this issue were delayed by husband’s extended absences on business. By opinion dated June 25, 1984, the Family Court found that there was marital property to be divided, and that it had worth of approximately $300,000.
 
 [3]
 
 This evaluation did not take into consideration the value of the husband’s vested pension. The principal marital assets were: (a) the husband’s thrift plan account with his employer, (b) the husband’s employee stock option plan, (c) the marital residence, and (d) various bank accounts.
 

 At the time of the hearing in Family Court, the husband was 63 years old. He had serious medical problems and was on sick leave pending retirement. There was testimony that he would retire on a pension of about $19,650 per year. The wife was 53 years of age at the time. She had an eye problem but was regularly employed, earning “roughly $19,000 per year”.
 

 After consideration of the factors listed in 13
 
 Del.C.
 
 § 1513(a), Family Court came to the conclusion that a “50%-50% distribution of the marital assets, excluding the pension, will be an equitable distribution.” Under this ruling, husband’s pension rights, the value of which had been estimated to be in excess of $150,000, were not deemed to be marital assets subject to distribution, and husband was permitted to retain all such rights, without any compensating award to the wife. Thus, in effect, the husband was granted marital assets worth about $300,000, and the wife got marital assets worth about $150,000.
 

 The Family Court’s attempts to justify this division of the assets are expressed not in terms of a two-thirds to one-third division, but rather in terms of an explanation
 
 *1247
 
 of why a vested pension was not treated as a marital asset. The reasons given by the Family Court may be summarized as follows:
 

 (1) Regardless of the pension’s actuary value, it can have no further monetary value to the husband than that which he will receive, and this is less than the wife will be receiving from her monthly earnings as a draftsper-son.
 

 (2) If Family Court were to divide the pension proceeds on an “if, as, and when” basis, the wife’s income from her employment, plus her share of husband’s pension, would afford her a larger income than that of her retired husband.
 

 (3) On the other hand, if Family Court were to require the husband to pay over to his wife (in other assets) one-half of the actuary value of his pension rights, the wife would end up with 75% of the litigants’ other liquid assets. Furthermore, two-thirds of the husband’s share of the total marital assets would consist of his pension rights. This, the Family Court deemed to be “unfair” and “unequal”.
 

 For the above reasons, the Family Court decided that “at this point and time” it is more equitable to treat “any division of the pension which is either being paid or about to be paid, as ordinary income.”
 
 [4]
 
 By treating the husband’s right to receive pension payments for the rest of his life as ordinary earned income, the Family Court decided, in effect, that a marital asset was not to be treated as a marital asset. Or, to analyze the ruling from a different viewpoint, it could be suggested that the Family Court ruled that husband was entitled to two-thirds of the marital assets. From either viewpoint, we regard the treatment of the pension by Family Court as an abuse of discretion under 13
 
 Del.C.
 
 § 1513(a).
 
 Robert C.S. v. Barbara J.S.,
 
 Del.Supr., 434 A.2d 383 (1981);
 
 Gregory J.M. v. Carolyn A.M.,
 
 Del.Supr., 442 A.2d 1373 (1982).
 

 In our view, each of the three factors mentioned by Family Court in connection with its treatment of the pension rights was worthy of consideration, but individually or collectively they would not justify treating such a valuable marital asset as if it did not exist at all. Conversely, if it was just and fair to award the husband two-thirds of the marital assets, such division should be described as such and should be shown to find overall support from the factors mentioned in 13
 
 Del.C.
 
 § 1513(a). The distribution the Family Court here ordered cannot be justified by the nature of the pension rights standing alone, and the explanations given are deemed to be inadequate.
 

 It is true that if the husband retains all his pension payments, his cash inflow will be only about the same as his wife is presently earning through her full-time employment. That fact, however, does not mean that it would be inequitable for the wife to receive some marital assets in lieu of some designated share of her former husband’s pension. She was his homemaker while he earned more than 90% of the pension, and, even if she is able to work for many more years, it is clear that, in view of her age and her years spent as a homemaker, she will never be able to earn comparable pension rights for herself. It must also be noted that any earnings she accumulates will be “on her own” while her husband’s were with her support.
 

 Furthermore, it is apparent that the husband will receive income of at least $330.00 per month from social security payments,
 
 *1248
 
 and that he will not be without other assets.
 

 A division of pension rights between the parties on an “if, as, and when” basis might result in the wife receiving a larger income than her husband (if social security is ignored), but this would be true only for so long as the wife is able and willing to stay employed. Furthermore, under such a division, the husband would have assets which he could use to buy life annuities or income producing investments. It must also be noted that the wife’s share of such pension rights need not be set at an amount equal to the husband’s share.
 

 While the income which marital assets (and other assets) will produce is a factor to be considered in the division of such assets under 13
 
 Del.C.
 
 § 1513(a), the division of marital property is not a substitute for alimony and different factors are considered or emphasized.
 
 William H.L. v. Virginia L.L.,
 
 Del.Supr., 457 A.2d 327 (1983).
 

 We are of the opinion that the elimination of the husband’s pension from the marital assets subject to distribution amounted to an abuse of discretion under the special circumstances of this case but, it does not follow that we have ruled that the Family Court must, on retrial, continue to adhere to its earlier ruling that a 50-50 division of all marital assets is equitable. The extent and nature of the marital assets to be divided has been changed by our ruling even though the basic financial circumstances of the litigants remain the same. The Family Court must now take all pertinent factors into consideration and decide what is fair and equitable under the new circumstances.
 

 In the cross-appeals before the Court, one party or the other has challenged other rulings of the Family Court. Among the errors which the Family Court is said to have made are: (a) a ruling that certain coins which are part of the marital property are worth $650 without specific evidence to support any evaluation, (b) a ruling that husband had failed to prove that he had borrowed $10,000 from a friend (with written proof of such loan), and that the loan was still outstanding, (c) a ruling in respect to who is to pay a $300 telephone bill which the wife incurred on account of installation of an extra telephone in the marital home after the parties separated, (d) a ruling that in the absence of specific information as to the tax consequences of the husband’s withdrawal of funds from the thrift and stock plans, the court would make no allocation of tax liability, and (e) a ruling that the marital residence was worth $89,900.
 

 We find almost no evidence to support any finding as to the value of the coins.
 

 To the extent that the findings made in Family Court on the other subjects listed above were factual, we find substantial evidence in the record to support them. To the extent that rulings made in Family Court on the other subjects listed above were matters of discretion, we find no abuse of discretion. We note, however, in the interest of fairness, that capital gains taxes may reduce the cash value of husband’s payout, and we rule that, on remand, the Family Court should give additional consideration to that matter under 13
 
 Del. C.
 
 § 1513(a)(ll).
 

 The rulings of the Family Court are affirmed, except as they are directly related to: (a) the status of husband’s vested pension rights as marital property subject to division, (b) the equitable division of all the marital assets, (c) the value assigned to the coin collection, and (d) the tax consequences of the rulings to the extent that taxes may reduce the net value of the capital assets (other than the pension), when funds are drawn out of plans or accounts set up by husband’s employer. As to those issues, the judgment of the Family Court is reversed, and the case is remanded to Family Court for a limited new trial.
 

 [1]
 

 . No significance was attached to the fact that husband’s divorce dissolving a former marriage was not yet final at that time, since the litigants lived together as man and wife beginning in 1963, and they confirmed their 1963 marriage by a second ceremony years later.
 

 [2]
 

 . 13
 
 Del.C.
 
 § 1513 states in pertinent part:
 

 (а) In a proceeding for divorce or annulment, the
 
 Court
 
 shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:
 

 (1) The length of the marriage;
 

 (2) Any prior marriage of the party;
 

 (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;
 

 (4) Whether the property award is in lieu of or in addition to alimony;
 

 (5) The opportunity of each for future acquisitions of capital assets and income;
 

 (б) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker or husband;
 

 (7) The value of the property set apart to each party;
 

 (8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;
 

 (9) Whether the property was acquired by gift, bequest, devise or descent;
 

 (10) The debts of the parties; and
 

 (11) Tax consequences.
 

 [3]
 

 . Throughout this opinion, very approximate figures have been used and even these have been drastically rounded off. Adjustments made in some of the figures by Family Court pursuant to a motion for reargument have been ignored. This Court recognizes that precise figures must be used by Family Court on remand, but, for purposes of the present opinion, the approximate figures will suffice.
 

 [4]
 

 . This Court rejects any suggestion that a final order dividing marital assets may be reconsidered at some future “point and time” except under the
 
 very
 
 limited conditions mentioned in 13
 
 Del.C.
 
 § 1519(a)(3). A substantial change in circumstances which might justify a reconsideration of an alimony award under 13
 
 Del.C.
 
 § 1519(a)(4) would not be a ground to reconsider a final division of property (absent a specially justified reservation of jurisdiction).
 
 See Bachtie v. Bachtie,
 
 Del.Supr., 494 A.2d 1253 (1985).