905 So.2d 1 (2004)
Bernard Schroder WILKINSON
v.
Claudia Kay WILKINSON.
2011255.
Court of Civil Appeals of Alabama.
April 16, 2004.
Certiorari Denied January 14, 2005.
Gerard J. Durward and G. John Durward, Jr., of Durward & Cromer, Birmingham, for appellant.
M. Richard Hughes, Birmingham, for appellee.
Alabama Supreme Court 1031192.

On Application for Rehearing
CRAWLEY, Judge.
The opinion of December 12, 2003, is withdrawn, and the following is substituted therefor.
This is the second time these parties have been before this court. See Wilkinson v. Wilkinson, 828 So.2d 924 (Ala.Civ.App. 2001) ("Wilkinson I"). In Wilkinson I, this court reversed the trial court's divorce judgment insofar as it failed to order the wife to provide the husband continued health-insurance coverage, failed to award the husband any portion of the wife's retirement *2 benefits, and failed to order the wife to pay sufficient alimony to the husband. On remand, the trial court entered an order modifying its alimony award but failing again to require the wife to provide continued health insurance for the husband or to divide the wife's retirement benefits. The husband appeals, arguing that the trial court is in error for failing to comply with the mandate of this court in Wilkinson I.
The trial court entered a lengthy order on remand, which stated, in part:
"2. This Court on remand, as in the original trial, denies the husband's request to divide the wife's retirement. This Court is well aware of the Court of Appeals' instructions herein and is not ignoring that mandate. However, this court must apply the law to the facts presented AND THE HUSBAND FAILED TO MEET THE EVIDENTIARY BURDEN IMPOSED BY § 30-3-51(b), Code of Alabama (1975).
"The wife has a retirement plan with a vested sum of $105,000.... She was hired December 1964 and vested February 1965.... These parties married in 1985. [Section] 30-2-51(b)(2) prohibits this Court from awarding `the value of any retirement benefits acquired prior to the marriage, including any interest or appreciation of the benefits.' This Court is unable to find one word of evidence concerning this critical factor. Without such proof, any award is error. DuBois v. DuBois, 714 So.2d 308 (Ala. Civ.App.1998). And a remand is not an opportunity for a party to retry a case to present evidence he should have presented the first time.
"3. With regard to health insurance, this court is again faced with a dilemma. This Court knows generally the availability of COBRA coverage and related issues. (Carter v. Carter, 666 So.2d 28 (Ala.Civ.App.1995), presumption that trial court knows the law).
"There is (and was) absolutely no evidence before this court that any insurance was available to [the] husband through the wife's efforts or employment. While previous coverage existed, it had been terminated. The Husband's projected budget ... includes an amount for health insurance premiums and that entry has been considered in addressing the periodic alimony needs."
(Capitalization and emphasis in original.)
Regardless of the trial court's belief that its original decision was correct, its duty on remand was to comply with the mandate in Wilkinson I. See Ex parte Jones, 774 So.2d 607, 608 (Ala.Civ.App. 2000).
"`On remand, the issues decided by the appellate court become [the] law of the case and the trial court's duty is to comply with the appellate mandate "according to its true intent and meaning, as determined by the directions given by the reviewing court." Ex parte Alabama Power Co., 431 So.2d 151[, 155] (Ala.1983) [(quoting 5 Am.Jur.2d, Appeal and Error, § 991 (1962))]. When the mandate is not clear, the opinion of the court should be consulted. See Cherokee Nation v. Oklahoma, 461 F.2d 674 (10th Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972).'
"Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983) (emphasis added in Walker); see also Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983)."
Ex parte Jones, 774 So.2d at 608.
The "law of the case" doctrine prevents this court from revisiting the earlier disposition of the issues relating to the *3 division of the wife's retirement account, the alimony award, or the requirement that the wife be made to pay for health-insurance costs. See Stephens v. Stephens, 699 So.2d 194, 196 (Ala.Civ.App.1997).
"`Under the doctrine of "law of the case," whatever is once established between the same parties in the same case continues to the be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.'"
Stephens, 699 So.2d at 196 (quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)). Therefore, the judgment of the trial court failing to comply with the mandate in Wilkinson I is reversed, and the cause is remanded with instructions that the trial court comply with the mandate set out in Wilkinson I.
Both parties' requests for an attorney fee on appeal are denied.
OPINION OF DECEMBER 12, 2003, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
YATES, P.J., concurs in the result, with writing.
MURDOCK, Judge, concurring specially.
Consideration of the issue of the award of retirement benefits in the present case has led me to reexamine this court's opinions in McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App.2002), and in Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App. 2003). Some of the statements in those opinions suggest that a trial court must always calculate the present value of retirement benefits that are to be included in a property division in a divorce action and that a trial court must always express the division of such retirement benefits in terms of their present value. I take this opportunity to express my conclusion that, while the results this court reached in McAlpine and Applegate were correct, those suggestions are incorrect and do not provide proper direction to the bench and bar for future cases.
Section 30-2-51(b), Ala.Code 1975, states:
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
"(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
(Emphasis added.)
In Smith v. Smith, 836 So.2d 893 (Ala. Civ.App.2002), a case we decided not long before we issued our opinions in McAlpine and Applegate, this court noted each of the various requirements imposed by § 30-2-51(b), Ala.Code 1975. After reflecting further on this court's opinions in McAlpine and Applegate, I come back to the conclusion that our earlier opinion in Smith v. *4 Smith contained a sufficiently complete restatement of the statute's requirements:
"A reading of § 30-2-51(b) indicates that a trial judge has the discretion to divide a spouse's retirement benefits if either of two conditions exists at the time the complaint for divorce is filed: a spouse must have a vested interest in or be receiving retirement benefits. Section 30-2-51(b) then states that the trial judge's discretion to divide retirement benefits is further limited by three additional conditions: the 10-year marriage rule of subsection (1); the post-nuptial acquisition-of-benefits rule of subsection (2); and the 50 percent division rule of subsection (3). The apparent meaning of these provisions, when read as a whole, is that the trial judge may divide the value of any retirement benefits in which one spouse has a vested interest or is receiving on the date the action for divorce is filed, provided that the parties have been married for 10 years as of that date, that the judge divides only those retirement benefits acquired during the marriage, and that the judge awards the noncovered spouse no more than 50 percent of the benefits that may be considered by the court."
Smith, 836 So.2d at 899-900 (emphasis on "provided that" original; other emphasis added). Nothing in this restatement requires the calculation of the present value of an awarded retirement benefit or dictates that every judgment awarding retirement benefits be couched in terms of the "present value" of those benefits.
In considering the meaning of the opening sentence of § 30-2-51(b), it is important to bear in mind that any asset, or portion of an asset, has both present and future values. Thus, an award to one spouse of a portion of the retirement benefits to be received by the other spouse necessarily entails an award of both the present and the future values of that benefit. While the opening sentence of § 30-2-51(b) provides that a judge may include in the estate of either spouse "the present value of ... future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed," whenever an award of some benefit is made, even if couched in terms of a portion of a benefit the retiring spouse otherwise would receive at some time in the future, the present value of that award is necessarily attributable to the recipient. As long as the court's award does not include any benefit not vested (or not being received) as of the date the complaint for divorce is filed and meets the other three requirements outlined in paragraphs (1) through (3) of § 30-2-51(b), see Smith v. Smith, 836 So.2d at 899-900, that award will be in compliance with the statute. Nothing in § 30-2-51(b) provides that there must necessarily be a calculation of "present value" or that the trial court's award must always be articulated as some portion of that present value.
It is true, of course, that property divisions in divorce cases are structured on the basis of the present value of the assets at issue. That is, trial courts, and this court, do not determine the projected value as of some future date of the assets being awarded to each spouse and then compare those projected future values to determine if the awards are equitable in comparison to one another. Instead, courts typically assess the assets' current values and, based on such values, attempt to make an equitable division of those assets.
Because of the manner in which property divisions are made and evaluated, in order for a court to make a meaningful comparison of one spouse's award to the other spouse's award, it will be necessary *5 in some cases (especially in cases involving what are known as "defined benefit plans," see Presiding Judge Yates's special writing concurring in the result) to calculate the present value of future retirement benefits in order to be able to fairly evaluate whether a stated portion of those benefits, when added to the other assets being awarded, make for an award that satisfies the requirement that property divisions be equitable. See, e.g., Boykin v. Boykin, 628 So.2d 949 (Ala.Civ.App.1993). This does not mean, however, that a calculation of present value will be necessary to satisfy the statutory requirements of § 30-2-51(b).
In Section I of this court's opinion in McAlpine, we found fault with the fact that the trial court framed its award as a portion of the retirement annuity the husband would receive in the future, concluding that that award amounted to an award of "a percentage of the future value of the husband's retirement benefits, not its present value, which violates § 30-2-51(b)." McAlpine, 865 So.2d at 440-41. In Applegate, we relied upon McAlpine and found fault with a similarly worded property division because of the wife's "failure to present the necessary evidence of the present valuation of retirement benefits." Applegate, 863 So.2d at 1124. After reflecting on this court's opinions in those two cases, I now realize that the problem with the judgments in both cases insofar as the restrictions contained in the first sentence of § 30-2-51(b) are concerned was not that the trial courts failed to receive evidence of, or failed to calculate, the present value of the husbands' retirement benefits (which, as discussed in Presiding Judge Yates's special writing concurring in the result, can become a very complicated and difficult exercise requiring the engagement of accountants or other experts), or that the trial courts failed to expressly couch their awards in terms of "present value." Rather, the problem in McAlpine was that, under the particular facts of that case (the husband was still working and therefore continuing to accumulate retirement benefits), the manner in which the trial court worded its award would capture the value of retirement benefits that would become vested after the complaint was filed. Likewise, in Applegate, the trial court awarded a percentage of benefits that would be vested as of a date after the filing of the complaint.[1] If the judgment in either case had simply awarded a percentage of whatever benefits were vested in the husband as of the date of the filing of the complaint for divorce (along with any subsequent interest on or appreciation in value of those vested benefits), the judgment would have been in compliance with the first sentence of § 30-2-51(b).
In the present case, the husband argues that
"[he] is not asking the court to ignore § 30-2-51, Ala.Code [1975], and award him any portion of the retirement accumulated before the marriage or in the two years since the final judgment of divorce. There is certainly no evidence of the contributions to the retirement since the final judgment of divorce, nor does there need to be. The court may simply award a specific percentage of the account that was accumulated between December 13, 1985, and February 5, 2001, as well as any appreciation thereon. The plan administrator can then calculate this specific amount the husband receives under the Qualified Domestic Relations Order (`QDRO')."
*6 I believe the husband's argument to be meritorious insofar as it goesthat is, insofar as it addresses the statutory requirements at issue.
The problem for the husband on remand, however, may turn out to be that the record does not contain sufficient evidence from which the trial court can determine the equity of such an award. As noted, the division of property in a divorce judgment must be equitable. See, e.g., Boykin, 628 So.2d 949. On remand, the trial court may determine that, without more evidence as to the value of the retirement benefits attributable to the period during which the parties were married (as opposed to the value of the retirement benefits attributable to the periods before and after the parties' marriage), it cannot determine what would be an equitable division of those benefits. I do not construe Wilkinson v. Wilkinson, 828 So.2d 924 (Ala.Civ.App.2001) ("Wilkinson I") as requiring the trial court to structure a division of the wife's retirement benefits that could be inequitable or that would be based on speculation as to the value of the benefits awarded. See Wilkinson I, 828 So.2d at 928 ("[w]e reverse the trial court's judgment and remand the case for the trial court to enter a more equitable order consistent with the holding in this opinion, being mindful of the age and health of the parties in its award of alimony and retirement benefits").
With the foregoing caveat, I concur in reversing the trial court's judgment and remanding this cause for compliance with the mandate in Wilkinson I.
YATES, Presiding Judge, concurring in the result.
This is the second time this case has been before this court. See Wilkinson v. Wilkinson, 828 So.2d 924 (Ala.Civ.App. 2001) ("Wilkinson I"). In Wilkinson I, we reversed the trial court's judgment and remanded the case for the trial court to "enter a more equitable order." 828 So.2d at 928. Specifically, we concluded in Wilkinson I that the trial court's alimony award to the husband was insufficient, that the trial court had abused its discretion in failing to award the husband any interest in the wife's retirement fund, and that the trial court had erred in failing to require the wife to provide continued health-insurance coverage for the husband or, at least, to require her to provide COBRA benefits.
On remand, the trial court, on June 24, 2002, modified its alimony award in accordance with Wilkinson I. However, it did not modify its property division or require the wife to provide the husband health-insurance benefits. On July 12, 2002, the husband filed a motion to alter, amend, or vacate the judgment. On August 14, 2002, following a hearing, the trial court denied the motion. The husband appealed, contending that the trial court erred in failing to follow this court's mandate in Wilkinson I concerning the division of the wife's retirement benefits and the provision of health-insurance coverage for the husband. I agree with the majority that the trial court on remand erred in failing to comply with the mandate of Wilkinson I. I write to address the trial court's concerns regarding health-insurance coverage and retirement benefits. I also write to address the application of § 30-2-51.
The trial court's order on remand stated, in part:
"2. This Court on remand, as in the original trial, denies the husband's request to divide the wife's retirement. This Court is well aware of the Court of Appeals' instructions herein and is not ignoring that mandate. However, this Court must apply the law to the facts presented AND THE HUSBAND FAILED TO MEET THE EVIDENTIARY *7 BURDEN IMPOSED BY § 30-2-51(b), Code of Alabama (1975).
"The wife has a retirement plan with a vested sum of $105,000.... She was hired December 1964 and vested February 1965.... These parties married in 1985. [Section] 30-2-51(b)(2) prohibits this Court from awarding `the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.' This Court is unable to find one word of evidence concerning this critical factor. Without such proof, any award is error. Dubois v. Dubois, 714 So.2d 308 (Ala. Civ.App.1998). And a remand is not an opportunity for a party to retry a case to present evidence he should have presented the first time.
"3. With regard to health insurance, this Court is again faced with a dilemma. This Court knows generally the availability of COBRA coverage and related issues. (Carter v. Carter, 666 So.2d 28 (Ala.Civ.App.1995), presumption that trial court knows the law).
"There is (and was) absolutely no evidence before this Court that any insurance was available to [the] husband through the wife's efforts or employment. While previous coverage existed, it had been terminated. The husband's projected budget ... includes an amount for health insurance premiums and that entry has been considered in addressing the periodic alimony needs."
(Capitalization and emphasis in original.)
The evidence is clear that the wife had provided health-insurance coverage for the husband. The wife testified that she had been providing the husband health insurance through her employer but that she had canceled the husband's coverage without informing him:
"Q. . . . [D]o you have medical insurance?
"A. Yes.
"Q. And [the husband] was on that too, wasn't he?
"A. Yes
"Q. And you removed his name from that, too?
"A. Yes, I did.
". . . .
"Q. Did you tell [your husband] you were going to do that?
"A. I didn't tell him I was going to. I told him after the fact.
"Q. After you did it?
"A. Yes."
There was sufficient evidence in the record that, before the divorce, health insurance was available to the husband through the wife's employer. This court's instructions upon remand to the trial court in Wilkinson I directed that "at a minimum" the wife be required to take the necessary steps to assist in obtaining any COBRA coverage that might be available for the husband through the group health plan of the wife's employer or to assist the husband in providing coverage because she had canceled his health-insurance coverage without his knowledge before she filed for a divorce. 828 So.2d at 928. On remand, the trial court stated, "There is (and was) absolutely no evidence before this Court that any insurance was available to husband through the wife's efforts or employment." (Emphasis in original.) I reiterate, the wife terminated the husband's insurance coverage without his knowledge before she filed for a divorce. In Wilkinson I, we held that the "trial court erred in failing to require that the wife provide continued health-insurance coverage for the husband." 828 So.2d at 928. Although any option the husband may have had to exercise COBRA benefits may now have lapsed because of the wife's cancellation of his insurance, the wife *8 should be ordered to purchase coverage for the husband equal to that which would have been available under her employer's policy had the husband been able to exercise the COBRA option.
On remand, the trial court also stated in its order that there was no evidence as to the wife's retirement benefits acquired before the marriage and those acquired after the marriage, and, therefore, it was unable to divide the benefits in accordance with § 30-2-51(b)(2), Ala.Code 1975. I disagree.
A review of retirement benefit plans, and the methods of valuing, dividing, and distributing the proceeds of those plans as part of the marital estate is necessary.[2] *9 *10 Most retirement plans are either a defined benefit plan or a defined contribution plan.[3] A defined benefit plan is one in which the benefits to be received by the employee are fixed and the employer's contribution is adjusted to the level necessary to fund those benefits. Alabama Power Co. v. Davis, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). A defined contribution plan is one in which the employer's contribution is fixed at a certain amount "and the employee receives whatever level of benefits the amount contributed on his behalf will provide." Davis, 431 U.S. at 593 n. 18, 97 S.Ct. 2002.
The amount of benefits received under a defined benefit plan is based on a combination of factors such as the highest income level achieved by the employee, the number of years worked, and the age of the employee at the time of retirement. A defined benefit plan is "the employer's promise to pay the participant a monthly amount commencing at retirement and continuing until death." Elizabeth M. Wells, Step One: Draft the QDRO, 24 Fam. Advocate 20, 21 (Fall 2001). A defined benefit plan is the predominant type of plan "employed by virtually all state and federal government agencies." Michael A. Stoller, Estimating the Present Value of Pensions: Why Different Estimators Get Varying Results, 2 J. of Leg. Econ. 49, 49 (Dec.1992). A defined contribution plan "functions like savings or brokerage accounts" and involves contributions from the employer, employee, or both. Id. Examples of defined contribution plans are those plans established in accordance with Internal Revenue Code § 401(k) ("401(k) plans"), profit-sharing plans, and employee stock-ownership plans ("ESOPs"). Timothy Voit & James L. Parris, Fundamentals of Qualified Domestic Relations Orders, 12 S.C. Lawyer 24 (June 2001).
Valuing benefits in a defined contribution plan is easier than valuing those in a defined benefit plan because with a defined contribution plan "individual accounts are maintained for each participant and periodic reports are furnished showing the investment transactions during the period." Note, The Retirement Equity Act: An Accommodation of Competing Interests, 63 Ind. L.J. 131, 136 (1987).
"A defined contribution pension plan is basically a pooled group Individual Retirement Account (IRA) combined with professional portfolio stock and money management. In such plans, valuation *11 is quite easy because retirement assets are individually identified, and the assets are largely held as securities that have readily identifiable market values."
David L. Baumer & J.C. Poindexter, Women and Divorce: The Perils of Pension Division, 57 Ohio St. L.J. 203, 209 (1996). With a defined benefit plan, "part of the employee's employment contract is a guarantee by the employer of an additional payout after the employee retires. The additional compensation is generally paid out according to a formula, with pension benefits related to the employee's salary level, years of service, and retirement age." Id. (Footnote omitted.) Defined benefit plans are more difficult to value because
"the value of an employee's interest in the plan is not ascertainable on any regular basis. All that is known is the value of the future retirement benefits earned to date; and those benefits are usually calculated upon the assumption that the employee will remain on the job until retirement age. Therefore the problem with the defined benefit plan is the determination of the value, at present, of the right to receive an unknown number of monthly checks, beginning at a future time."
Barth H. Goldberg, Valuation of Divorce Assets § 9.2 at pp. 232-33 (1984).
There are different stages of vesting and maturity that effect the division of retirement benefits. An employee spouse may be vested (i.e., have a legal right to receive the benefits) and the right may have matured where the benefits are currently payable (i.e., the employee spouse reached a certain age, retired, or terminated the employment relationship). If the employee spouse is vested but the benefits are not payable until some time in the future, then it is more difficult to value and divide the retirement benefits.[4]
Courts have employed various methods regarding when retirement benefits should be distributed as part of a property division. Although the courts differ in the terms used to describe the distribution methods, there are three primary methods used to distribute retirement benefits: the immediate-offset method, the deferred-distribution method, and the reserve-jurisdiction method. Brett R. Turner, Equitable Distribution of Property § 6.11 (2d ed.1994). The immediate-offset method, also called the present-cash-value method, requires a determination of the present value of the retirement benefits accumulated during the marriage; then, the court awards the pension-participant spouse the pension and awards the nonparticipant spouse other offsetting assets equivalent in value to a certain percentage of the present value of the accumulated retirement benefits.[5] In some courts, this is the preferred method when the marital estate has sufficient assets to satisfy the nonparticipant's share of the benefits. See, e.g., *12 Balderson v. Balderson, 127 Idaho 48, 896 P.2d 956 (1995); Cross v. Cross, 178 W.Va. 563, 363 S.E.2d 449 (1987); Taylor v. Taylor, 329 N.W.2d 795 (Minn.1983); Kuchta v. Kuchta, 636 S.W.2d 663 (Mo.1982). However, many courts encourage the trial courts to apply the method that best fits the particular facts of the case. J. Thomas Oldham, Divorce, Separation, and the Distribution of Property § 7.10[7] (2003). One positive effect of the immediate-offset method is that all transactions between the parties are finalized at the time of the divorce. Pulliam v. Pulliam, 796 P.2d 623 (Okla.1990)(comparing the immediate offset/present-cash-value method with the deferred-distribution method). The immediate-offset method is not feasible where there are insufficient assets by which to offset the nonparticipating spouse's share of the present value of the pension or where no present value can be established. Krafick v. Krafick, 234 Conn. 783, 802, 663 A.2d 365, 374 (1995). Although it was not called an immediate offset, this court has affirmed an award of alimony in gross to the wife equal to one-half of the husband's contribution to his retirement plan. In Nelson v. Nelson, 628 So.2d 798 (Ala.Civ. App.1993), the husband's retirement plan was valued at $93,009. The husband had contributed $46,504 to the plan. The trial court awarded the wife $23,250 in alimony in gross. We held that the husband had ample assets, other than his retirement plan, with which to satisfy the award of alimony in gross. I note that Nelson was decided before the Legislature amended § 30-2-51 in 1995.
The deferred-distribution method requires the court to determine the formula for calculating the amount to be distributed to the parties when benefits become available in the future.
"The court typically determines the non-employee spouse's percentage of the future pension benefits which are attributable to the marriage.... An advantage of the deferred distribution approach is that the present value of the pension fund need not be determined. The major disadvantage is that a final resolution is not reached at the time of divorce."
Pulliam v. Pulliam, 796 P.2d at 626. In Gates v. Gates, 830 So.2d 746 (Ala.Civ.App. 2002), the trial court awarded the wife one-half of the husband's retirement benefits that had accrued as of the date of the divorce and ordered that those benefits be paid at the time the benefits were paid to the husband. Although it was not called deferred distribution, that was the method used by the trial court in determining the formula for distribution and deferring that distribution until maturity of the benefits.
The reserve-jurisdiction method requires the court to hold the matter in abeyance until a later date. The reserve-jurisdiction method has some advantages over the deferred-distribution method and the immediate-offset method because
"it avoids the inequities of distributing a non-possessory asset and obviates the need to calculate present value at the date of divorce. In addition, the reserved jurisdiction approach enables the court to consider a return on the investment of an unemployed spouse's share and the role played by early pension payments in the ongoing integrity of the plan itself."
Elizabeth Barker Brandt, Valuation, Allocation, and Distribution of Retirement Plans at Divorce: Where Are We?, 35 Fam. L.Q. 469, 488 (Fall 2001)(footnote omitted). One disadvantage of reserving jurisdiction is that "the process is disrupted when a major asset is essentially taken off the equitable table." Id. In Peoples v. Peoples, 886 So.2d 837 (Ala.Civ.App.2003), this court dismissed an appeal as from a *13 nonfinal judgment where the trial court reserved jurisdiction to address the division of retirement benefits.
In dividing a spouse's retirement benefits as part of a property division, the court must also determine which portion of the retirement benefits is marital property and which portion is separate property.
"For defined benefit plans, most courts have calculated the marital interest in the pension based on the relative amount of time the employee was married during the total employment period.... In a defined contribution plan, because there is a separate pension account maintained for each employee, it is fairly simple to determine the balance of the account at the time of the marriage and at the time of the divorce. The difference between the account balances, with a potential reduction for increases in value during marriage of premarital contributions, is the marital contribution in the account."
Oldham, supra, at § 7.10[5][b].
The coverture or marital fraction has been used to determine what portion of the retirement benefits are marital property.
"The marital fraction consists of the numerator, which is the number of years (or months if more accurate) that the employee spouse has earned towards the pension during the marriage, over the denominator, which is the number of years (or months if more accurate) of total service towards the pension."
In re Marriage of Hunt, 909 P.2d 525, 531 (Colo.1995). I believe that the coverture-fraction method should apply primarily to defined benefit plans because it is more accurate to determine the marital interest in a defined contribution plan by the subtraction or accrual-of-benefits method. Under the accrual-of-benefits method:
"[t]he accrued benefit at the date of marriage is subtracted from the accrued benefit at the date of divorce to arrive at the benefit to be divided. In jurisdictions in which the income on non-marital property is also treated as non-marital property, the accrual-of-benefits method becomes more complex. In these types of jurisdictions, the premarital component of the account consists not only of its balance on the date of marriage but also of the compounded income earned on the premarital contributions. To use the accrued benefit approach, a practitioner also needs to know the value of the pension at the date of marriage and its value at the date of divorce. The value at the date of marriage is subtracted from the value at the date of divorce to arrive at the marital property component of the pension plan."
Brandt, 35 Fam. L.Q. at 476 (footnotes omitted). However, I do note that some courts have computed the marital interest in a defined contribution plan by applying the coverture fraction. See, e.g., Marriage of Walker, 304 Ill.App.3d 223, 710 N.E.2d 466, 237 Ill.Dec. 836 (1999)(trial court's method of determining marital interest in a pension was affirmed where no better evidence of determining the marital interest in the defined contribution plan was presented); Alford v. Alford, 653 So.2d 133 (La.Ct.App.1995)(remanded for the trial court to apply the coverture fraction to defined contribution plan). I recognize that no hard and fast rule should apply in the division of retirement benefits because "the parties' circumstances and the varieties of retirement plans `are almost infinite.'" In re Marriage of Hester, 122 Or.App. 147, 150, 856 P.2d 1048, 1049 (1993), quoting In re Marriage of Rogers, 45 Or.App. 885, 892, 609 P.2d 877, 881 (1981). Additionally, it is important to recognize that the use of either the coverture-fraction method or the accrual-of-benefits method has nothing to do with the valuation *14 of the retirement plan itself. Instead, both formulas are used to "determine what part of the value of the plan is attributable to the years of marriage and hence marital property subject to equitable distribution." Paulone v. Paulone, 437 Pa.Super. 130, 137, 649 A.2d 691, 695 (1994)(rejecting the use of the coverture-fraction method where the marital portion of husband's defined contribution plan was the difference between the value of the plan at the date of the marriage and value of the plan at the date of the separation).
Applying the distribution method to the type of retirement plan involves different calculations. If the immediate-offset method of distribution is used, then a present value of the marital property, including retirement benefits that are considered marital property, must be determined in order to offset the value of those retirement benefits with other marital assets. "Valuation of defined contribution plans is easy. The amount of the employee's individual account is the present value of the pension." Kalinoski v. Kalinoski, 29 Pa. D. & C.3d 37, 53 (1983). Most courts have concluded that there is no need to discount the value of a defined contribution plan because the value is the present amount credited to that account. See, e.g., Johnson v. Johnson, 131 Ariz. 38, 638 P.2d 705 (1981); Gray v. Gray, 352 Ark. 443, 101 S.W.3d 816 (2003); In re Marriage of Nordahl, 834 P.2d 838 (Colo.Ct.App.1992); Krafick v. Krafick, 234 Conn. 783, 663 A.2d 365 (1995); Duncan v. Duncan, 724 S.W.2d 231 (Ky.Ct.App.1987); Burkey v. Burkey, 189 Mich.App. 72, 471 N.W.2d 631 (1991); Marx v. Marx, 265 N.J.Super. 418, 627 A.2d 691 (Ch.Div.1993); In re Marriage of Franzke, 292 Or. 110, 637 P.2d 595 (1981); Paulone v. Paulone, 437 Pa.Super. 130, 649 A.2d 691 (1994); Kanta v. Kanta, 479 N.W.2d 505 (S.D.1991); Bettinger v. Bettinger, 183 W.Va. 528, 396 S.E.2d 709 (1990).
Determining the present value of a defined benefit plan, however, is more difficult.
"This is true because the value of an employee's interest in the plan is not ascertainable on any regular basis. All that is known is the value of the future retirement benefits earned to date; and those benefits are usually calculated upon the assumption that the employee will remain on the job until retirement age. Therefore the problem with the defined benefit plan is the determination of the value, at present, of the right to receive an unknown number of monthly checks, beginning at a future time. Of course this determination is made more complex if the employee is subject to the following contingencies:
"a. The employee may be fired,
"b. The employee may change employment, or
"c. The employee may die."
Goldberg, Valuation of Divorce Assets, § 9.2 at pp. 232-33. "The present value of a benefit under a defined benefit plan is determined as an actuarial equivalent to the benefit that would be paid commencing at the participant's normal retirement age." Emily F. Johnson Estate Planning Issues in a Matrimonial Practice (PLI Tax Law and Estate Planning Course Handbook Series No. DR-5232, 1992). Calculating the present value of a defined benefit plan generally requires discounting for mortality, interest, and the probability that the employee will remain with company until retirement age. DeMarco v. DeMarco, 2000 Pa.Super. 354, 787 A.2d 1072 (2001). "Attorneys should realize that two experts hired to do the same pension valuation may differ significantly in the present values they arrive at for a variety of reasons, including differing job tenure assumptions, the mortality tables or discount rates employed and the assumptions they *15 make regarding the future cost of living adjustments." Stoller, 2 J. of Leg. Econ. at 49. Generally, the use of an expert is required in determining the present value of a defined benefit plan. Goldberg, § 9.2.
With the deferred-distribution method and the reserve-jurisdiction method, there is no need to reduce the value of a defined benefit plan to present value or to look at the present amount of a defined contribution plan.
"[D]eferred distribution and reserve jurisdiction, the latter of which is also referred to as `wait and see,' do not result in immediate offset and the nonemployee spouse does not receive any benefits until the benefits actually are paid to the employee spouse or the employee spouse becomes eligible to receive benefits. In deferred distribution, the trial court predetermines the percentage of the pension stream of income that the nonemployee spouse will be eligible to receive once the pension is both vested and matured. If the court reserves jurisdiction, the nonemployee spouse's percentage share is calculated later at the time when the pension has vested and matured."
Hunt, 909 P.2d at 531 (footnote omitted). Because the deferred-distribution and reserve-jurisdiction methods delay distribution, both methods eliminate speculation surrounding the valuation of the pension.
"[A] court cannot assign a present value to the pension at the time of divorce and then defer distribution of that value until the pension is received. This is so because `[t]he only reason for discounting to present value is to justify the payment in present dollars of a sum of money which is not due, if at all, until some time in the future.'"
Claffey v. Claffey, 360 N.J.Super. 240, 257-58, 822 A.2d 630, 642 (App.Div.2003)(quoting Whitfield v. Whitfield, 222 N.J.Super. 36, 51, 535 A.2d 986, 994 (App.Div.1987)) (citation omitted).
With the deferred-distribution method, the trial court determines a formula to be used in advance of the distribution of the retirement benefits. Depending on the type of retirement plan involved and the circumstances of the parties, the trial court determines the marital interest in the retirement benefits. The court would also have to determine what percentage of those benefits should be distributed to the partiese.g., under § 30-2-51, no more than 50% of a spouse's retirement benefits may be distributed to a nonparticipating spouse, and, in community-property states, 50% of the benefits must automatically be distributed to the nonparticipating spouse. When the court establishes the percentage of benefits to be distributed to the parties, the value of those benefits is unknown; the determination of the dollar amount of the benefits must await receipt of benefits.
In 1995, our Legislature amended § 30-2-51(b) to provide for a division of retirement benefits, if the parties have been married for 10 years, based on the "present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed." "The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits." § 30-2-51(b)(2). Section 30-2-51(c) provides that if the court determines that the retirement benefits are divisible, the amount is not distributable "until the covered spouse begins to receive his or her retirement benefits or reaches the age of 65 years, unless both parties agree to a lump sum settlement of the non-covered spouse's benefits payable in one or more installments."
This court has stated:

*16 "The law is well settled concerning the rules of statutory construction. `The fundamental rule of statutory construction is to ascertain and give affect to the intent of the legislature in enacting the statute.' John Deere Co. v. Gamble, 523 So.2d 95, 99 (Ala.1988). `If possible, the intent of the legislature should be gathered from the language of the statute itself.' Id. at 99-100. However, the legislature's intent also may be discerned from the reasons and necessity for the act, and the goal sought to be obtained. Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909, 924 (Ala.1994). `If a statute is susceptible to two constructions, one of which is workable and fair and the other unworkable and unjust, the court will assume that the legislature intended that which is workable and fair.' Id."
Sorrell v. Johnson, 690 So.2d 1210, 1212 (Ala.Civ.App.1996).
Clearly, the Legislature intended for vested retirement benefits to be divisible as marital property under certain circumstances. Section 30-2-51(b) provides that the trial court may award the present value of the retirement benefits earned during the marriage. Nothing in 30-2-51 specifically limits the trial court's discretion as to the most appropriate method to be used for distributing those retirement benefits that are marital assets. That is, the Legislature did not limit the trial court to the immediate-offset method of distribution. In fact, such a limitation would be unworkable and unfair in many situations, especially when there are inadequate marital assets to offset the value of the pension. Requiring the use of the immediate-offset method would also conflict with § 30-2-51(c), wherein the Legislature appears to postpone distribution until retirement, which seems to correspond with the deferred-distribution method. However, the Legislature's use of the term "present value" could be interpreted as having the effect of requiring the use of the immediate-offset method. As discussed earlier, a discounting for present value is not necessary in order to determine the value of all retirement benefits for an equitable distribution. Rather than take this narrow view of the phrase "present value," I believe that it was the Legislature's intent to value the retirement benefits at the time of the divorce when making an equitable division of retirement benefits earned during the marriage. I also do not believe that the Legislature intended to limit the trial court's discretion in dividing the marital assets by restricting the court to a particular method of distribution. "`It is important that a statute not be read in an atmosphere of sterility, but in the context of what actually happens when human beings go about the fulfillment of its purposes.'" Sorrell, 690 So.2d at 1213, quoting 2A N. Singer, Sutherland Statutory Construction § 45.12 at p. 61 (5th ed.1992).
In the present case, the wife had a vested interest in a defined contribution plan. It was a 401(k) plan compromised of various investment vehicles and an ESOP. The undisputed evidence was that the account had a "current vested value" at the time the action was filed of over $105,000. The parties married in 1985, and the wife filed for a divorce in 2000. The wife began contributing to her retirement plan in 1965, and she became fully vested five years later.[6] She was awarded the marital home. There is no evidence to indicate *17 that there is any other asset available to offset the husband's marital share in the wife's pension plan. There was no argument made that the "current vested value" of over $105,000 was not the "present" value of the wife's retirement benefits. Indeed, the wife had a defined contribution plan that is presently valued as the amount credited to her individual account.[7]
I conclude that there is enough evidence in the record for the trial court on remand to apply the coverture-fraction method to determine the marital and premarital portions of the retirement benefits in order to determine what is marital property, subject to division, and what is separate property, not subject to division. However, I believe that it would be more equitable for this court to remand the case for the taking of additional testimony in order to apply the accrual-of-benefits method to the determine the wife's marital interest in the plan.[8] Because, as this court has stated, "§ 30-2-51 is not a model of legislative clarity," Smith v. Smith, 836 So.2d 893, 899 (Ala.Civ.App.2002), remanding the case with instructions is warranted in my opinion.
Accordingly, I concur in the result.
NOTES
[1] The complaint in Applegate was filed in September 2001, but the trial court awarded a "`percent[age] interest in the retirement of the [husband] as of June 10, 2002.'" Applegate, 863 So.2d at 1124.
[2] Forty-two states, including Alabama, are common-law-property states, requiring an "equitable," "fair," or "just" distribution of marital property upon termination of the marriage, which may include a division of retirement benefits. See, e.g., Alaska: Alaska Stat. § 25.24.160 (retirement benefits acquired during the marriage must be divided in a just manner); Arkansas: Ark.Code Ann. § 9-12-315(b)(1), and Gray v. Gray, 352 Ark. 443, 101 S.W.3d 816 (2003)(discussing valuation and division of retirement benefits at divorce); Colorado: Colo.Rev.Stat. § 14-10-113, and In re Marriage of Hansen, 62 P.3d 1066 (Colo.Ct.App.2002)(it is well-settled law that retirement benefits are marital property subject to distribution); Connecticut: Conn. Gen.Stat. § 46b-81, and Bender v. Bender, 258 Conn. 733, 785 A.2d 197 (2001)(discussing valuation and distribution of pension benefits for equitable-distribution purposes); Delaware: Del.Code Ann. tit. 13, § 1513, and Donovan v. Donovan, 494 A.2d 1260 (Del.1985)(trial court abused its discretion in allowing spouse to keep entire proceeds of pension either by not considering those proceeds as a marital asset or by awarding two-thirds of marital assets to that spouse); Florida: Fla. Stat. ch. 61.075, and Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986)(spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property); Georgia: Ga.Code Ann. § 19-5-13, and Andrews v. Whitaker, 265 Ga. 76, 453 S.E.2d 735 (1995)(vested and unvested retirement benefits are subject to equitable division); Hawaii: Haw.Rev.Stat. § 580-47, and Linson v. Linson, 1 Haw.App. 272, 618 P.2d 748 (1980)("estate of the parties" as used in § 580-47 includes anything of present or prospective value, including nonvested retirement benefits, for just and equitable division of property); Illinois: 750 Ill. Comp. Stat. 5/503 (all pension benefits earned during the marriage are presumed marital property and will be subject to division in just and proportional manner); Indiana: Ind.Code § 31-15-7-5, and Wilson v. Wilson, 732 N.E.2d 841 (Ind.Ct.App.2000)(husband failed to rebut presumption that an equal division of marital property is just and reasonable, where he failed to present evidence of his premarital-employment contribution); Iowa: Iowa Code § 598.21, and In re Marriage of Howell, 434 N.W.2d 629 (Iowa 1989)(pension benefits are treated as marital property and are subject to equitable distribution); Kansas: Kan. Stat. Ann. § 60-1610(b)(1)(divorce decree shall divide all real and personal property, including any retirement and pension plans); Kentucky: Ky.Rev.Stat. Ann. § 403.190, and Foster v. Foster, 589 S.W.2d 223 (Ky.Ct.App.1979)(pension plan was part of consideration earned by the husband during the marriage and therefore subject to division); Maine: Me.Rev.Stat. Ann. tit. 19-A, § 953, and Marquis v. Chartier, 592 A.2d 169 (Me.1991)(trial court was not required to make mathematically precise division of spouse's pension benefits, only just and equitable division); Maryland: Md.Code Ann., Fam. Law § 8-205 (setting out factors for determining amount and method of payment or terms of transfer of retirement benefits as part of equitable distribution); Massachusetts: Mass. Gen. Laws ch. 208, § 34 (court may assign to either spouse all or part of the estate, including but not limited to retirement benefits); Michigan: Mich. Comp. Laws § 552.18, and Magee v. Magee, 218 Mich.App. 158, 553 N.W.2d 363 (1996)(pensions are considered part of the marital estate and may be distributed through the division of property or the award of alimony depending on the equities of the case); Minnesota: Minn.Stat. § 518.54 (marital property includes vested public or private pensions acquired during the existence of the marriage); Mississippi: Magee v. Magee, 661 So.2d 1117 (Miss.1995)(husband's 401(k) account was marital asset subject to equitable distribution now that state has abandoned title method of distribution and evolved into equitable-distribution system); Missouri: Mo.Rev.Stat. § 452.330, and Silcox v. Silcox, 6 S.W.3d 899 (Mo.1999)(presumption that all property acquired during the marriage, including retirement benefits, be treated as marital property); Montana: Mont.Code Ann. § 40-4-202, and In re Marriage of Kis, 196 Mont. 296, 639 P.2d 1151 (1982)(retirement benefits properly included as a marital asset of the parties); Nebraska: Neb.Rev. Stat. § 42-366(8)(if the parties fail to agree upon division of marital property, the court shall order an equitable division of the marital estate, which includes vested and nonvested retirement benefits); New Hampshire: N.H.Rev.Stat. Ann. § 458:16-a (presumption that equitable distribution is an equal division of the marital property, including retirement benefits, unless the court establishes a trust for the children or finds that an equal division would not be appropriate); New Jersey: N.J. Stat. Ann. § 2A:34-23, and Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989) (difficulty inherent in placing present value on a future benefit does not bar court from including that benefit in the equitable division of the marital property); New York: N.Y. Dom. Rel. Law § 236, and Majauskas v. Majauskas, 61 N.Y.2d 481, 463 N.E.2d 15, 474 N.Y.S.2d 699 (1984)(severance and retirement benefits are deferred compensation and generally considered to be marital assets); North Carolina: N.C. Gen.Stat. § 50-20 (marital property subject to equitable division upon dissolution includes vested and nonvested retirement benefits); North Dakota: N.D. Cent.Code § 14-05-24, and Nelson v. Nelson, 584 N.W.2d 527 (N.D.1998) (pensions and retirement benefits are marital assets subject to equitable distribution); Ohio: Ohio Rev.Code Ann. 3105.17 (marital property includes retirement benefits of both spouses acquired during the marriage and is subject to equitable division); Oklahoma: Okla. Stat. tit. 43, § 121, and Jackson v. Jackson, 45 P.3d 418 (Okla.2002) (absent specific statutory exceptions, pension benefits accumulated during the marriage are subject to equitable division); Oregon: Or.Rev.Stat. § 107.105 (allowing for just and proper division of real and personal property including retirement and pension plans); Pennsylvania: 23 Pa. Cons.Stat. § 3501 and § 3502, and Brown v. Brown, 447 Pa.Super. 424, 669 A.2d 969 (1995) (retirement benefits, vested and nonvested, are marital property subject to equitable division); Rhode Island: R.I. Gen. Laws § 15-5-16.1, and Stevenson v. Stevenson, 511 A.2d 961 (R.I.1986) (retirement benefits generally are marital property subject to equitable division); South Carolina: S.C.Code Ann. § 20-7-472, and Ball v. Ball, 314 S.C. 445, 445 S.E.2d 449 (1994) (whether vested or nonvested, pension benefits are deferred compensation and as such are marital property subject to equitable distribution); South Dakota: S.D. Codified Laws § 25-4-44, and Abrams v. Abrams, 516 N.W.2d 348 (S.D. 1994) (all pensions, vested or nonvested, are marital property subject to equitable division upon divorce); Tennessee: Tenn.Code Ann. § 36-4-121 (marital property includes vested and nonvested pension benefits that accrued during the marriage and is subject to equitable division); Utah: Utah Code Ann. § 30-3-5, and Woodward v. Woodward, 656 P.2d 431 (Utah 1982) (pension benefits are divisible marital assets); Vermont: Vt. Stat. Ann. tit. 15, § 751, and McDermott v. McDermott, 150 Vt. 258, 552 A.2d 786 (1988) (pension benefits are marital assets available for equitable division); West Virginia: W.Va.Code § 48-7-103, and McGee v. McGee, 214 W.Va. 36, 585 S.E.2d 36 (2003) (former statute does not mention retirement benefits but is broad enough to include pension benefits as marital property subject to equitable distribution); Wisconsin: Wis. Stat. § 767.255, and Olski v. Olski, 197 Wis.2d 237, 540 N.W.2d 412 (1995) (pension benefits accumulated during the marriage are divisible as marital assets); and Wyoming: Wyo. Stat. Ann. § 20-2-114, and Johnson v. Johnson, 851 P.2d 4 (Wyo. 1993) (recognizing that retirement funds vested or nonvested, matured or not maturedare marital property divisible upon divorce).

Eight states are community-property states requiring an equal division of marital property, which generally includes retirement benefits: Arizona: Ariz.Rev.Stat. § 25-318, and Koelsch v. Koelsch, 148 Ariz. 176, 713 P.2d 1234 (1986)(retirement benefits are community property subject to division at dissolution); California: Cal. Fam.Code § 2610 (retirement benefits acquired during the marriage are community property); Idaho: Id.Code § 32-712(7)(retirement benefits are community property); Louisiana: La. Civ.Code Ann. art. 2338, and Sims v. Sims, 358 So.2d 919 (La.1978)(pension rights derived from spouse's employment during marriage are community property subject to division); Nevada: Nev.Rev.Stat. § 125.150, and Walsh v. Walsh, 103 Nev. 287, 738 P.2d 117 (1987)(retirement benefits earned during the marriage are community property); New Mexico: N.M. Stat. Ann. § 40-3-8, and Copeland v. Copeland, 91 N.M. 409, 575 P.2d 99 (1978)(retirement plans are a form of employee compensation and if acquired during marriage are community property subject to division); Texas: Tex. Const. art. 16, § 15, Tex. Fam.Code § 3.002, and Shanks v. Treadway, 110 S.W.3d 444 (Tex.2003)(discussing generally pension benefits as community property); and Washington: Wash. Rev.Code § 26.16.030, and Farver v. Department of Retirement Sys., 97 Wash.2d 344, 644 P.2d 1149 (1982)(pensions in general are subject to community-property laws).
[3] There are also hybrid plans that contain attributes of both a defined contribution plan and a defined benefit plan. One example is a "cash-balance plan," which is considered a form of a defined benefit plan under the Employee Retirement Income Security Act ("ERISA"), but which resembles a defined contribution plan. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365 (3d Cir.2003). In a cash-balance plan, the employer's contributions are placed into hypothetical individual employee retirement accounts. Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755 (7th Cir.2003). In valuing hybrid plans, attention should be paid to the plan's features because it may not operate exclusively as a defined contribution plan or a defined benefit plan. Elizabeth M. Wells, Step One: Draft the QDRO, 24 Fam. Advocate 20, 21 (Fall 2001).
[4] The majority of states include nonvested retirement benefits as marital property. Elizabeth Barker Brandt, Valuation, Allocation, and Distribution of Retirement Plans at Divorce: Where Are We?, 35 Fam. L.Q. 469, 483 n. 48 (Fall 2001). However, in Alabama, § 30-2-51(b), Ala.Code 1975, provides that retirement benefits must be vested before they can be divided as marital property.
[5] In most common-law-property states, it is within the trial court's discretion to determine the percentage of the value of the retirement benefits that can be awarded. In community-property states, 50% of the value of the retirement benefits can be offset with other property. In Alabama, a court can award no more than half of the value of the retirement benefits because § 30-2-51(b)(3) provides that "benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
[6] The trial court's order on remand states that the wife became vested within one year of starting her employment. However, the record indicates that the wife became vested as to her contributions to the plan within one year and that she became fully vested as to her employer's contributions to the plan within five years.
[7] Neither party makes an argument as to what is the proper cutoff date for valuation of the retirement benefits. See generally William M. Troyan, An Update on Pension Evaluations, 31 Fam. L.Q. 5 (1997)(cutoff date is the last date for accumulating marital or community property, and, in many jurisdictions, it is the date of divorce); see also 34 A.L.R.4th 63 (1984).
[8] I note that in postminority-support cases in which there is no evidence of the factors set out in Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), this court has remanded for the taking of additional testimony. See, e.g., Hertzberg v. Gainey, 855 So.2d 561 (Ala.Civ.App.2003); Beavers v. Beavers, 717 So.2d 373 (Ala.Civ. App.1997); Layfield v. Roberts, 599 So.2d 1169 (Ala.Civ.App.1991); Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990).